**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (231) 788-4070

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MESSENGER, UGOCHUKWU ATULOBI, IVETH RODRIGUEZ, LORINE DERHAM, TATIANA BRODISKI, ARA SARDARBEGIANS, AND MARK CAMPLESE, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> META PLATFORMS, INC. <br><br> Defendant. | Case No.: 3:25-cv-05067 <br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P.: (213) 788-4050  F.: (213) 788-4070  |  clarksonlawfirm.com

Plaintiffs Elizabeth Messenger, Ugochukwu Atulobi, Iveth Rodriguez, Lorine Derham, Tatiana Brodiski, Ara Sardarbegians, and Mark Camplese (collectively "Plaintiffs"), individually and on behalf of all others similarly situated bring this action against Defendant Meta Platforms, Inc. ("Defendant" or "Meta").

Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth, after a reasonable opportunity for discovery.

## **INTRODUCTION**

1.     Meta is one of the most powerful technology companies in the world and owns and operates multiple social media platforms and communication services, including Instagram, Facebook, Threads, and WhatsApp. Meta also functions as an advertising network for its own platforms, as well as third parties, with advertising accounting for 95 percent of its total revenue. This revenue exceeded $164 billion in 2024.[1]

2.     Publicly, Meta claims to respect privacy, e.g., that they want people "to understand what information we collect, and how we use and share it." [2] In reality, however, Meta has been secretly tracking and surveilling the mobile use of millions of Android users as they visited third-party websites, including news outlets, medical resources, and shopping platforms—all without Android users' knowledge or consent.

---

[1] Derek Saul, *Meta Earnings: Record Profits, Sales As Ads Stay Robust During Zuckerberg's 'Year Of Efficiency'*, Forbes (Oct. 25, 2023), https://www.forbes.com/sites/dereksaul/2023/10/25/meta-earnings-record-profits-sales-as-ads-stay-robust-during-zuckerbergs-year-of-efficiency/; *Meta Reports Fourth Quarter and Full Year 2024 Results*, Meta (Jan. 29, 2025), https://investor.atmeta.com/investor-news/press-release-details/2025/Meta-Reports-Fourth-Quarter-and-Full-Year-2024-Results/default.aspx.

[2] *Privacy Policy*, Meta, https://www.facebook.com/privacy/policy/.

CLASS ACTION COMPLAINT

3.     This secret digital surveillance far exceeded anonymized metrics. Instead, Meta engineered a system to wholly bypass Android's and users' privacy safeguards and harvest users' private and personal online information and activity—real-time browsing, financial behavior, immigration status and related personal searches, as well as religious, political, and sexual identity and related searches ("Private Information")—and then linked all of it to real identities. This even included data from incognito or private browsing modes, exposing users' most sensitive and intimate moments, and feeding it into Meta's vast behavioral advertising engine to generate hundreds of millions in revenues.

4.     The illicitly harvested data reveals the users' real identities and ties them to Facebook's accounts, providing a highly detailed level of personal insight into each user, in real time. For example, because of Meta's deliberate scheme, if an individual searches for an abortion clinic, even while using a private browser, Meta is now able to identify who that person actually is, rather than just knowing they are an Android user generally or other anonymized information. Likewise, if an Android user were to visit immigration law firm sites, read about asylum, DACA, or visas, search for clinics that do not require proof of citizenship, search for employers who pay cash and do not require SSN, or looks up for emergency services for undocumented patients—again, Meta knows exactly who it is, what they are searching and what forms they are filling out in real time, gathering without consent all of these sensitive and highly personal insights. Then, it links the illegally accessed information to a user's actual name. Put differently, Meta has taken Android users' most sensitive searches and other confidential real-time web activity to drive its advertising algorithms for profit, without user knowledge or consent, all while directly—and forever—linking that sensitive data to one's personal identity.

5.     Meta deliberately engineered the system to capture highly sensitive and personal information against the wishes of the users, including those users Meta knew were taking extra steps to protect their privacy and avoid online surveillance, such as incognito mode. In secretly surveilling

2

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

users, Meta also violated Google's terms of services, including by intentionally bypassing Android's security and privacy settings.

6.      Meta's actions—conducted without user consent and for its own financial benefit—resulted in severe privacy violations for the millions of Android and Meta Users, including Plaintiffs, across the United States. Their private web browsing data was harvested by Meta, who then used it for pecuniary gain by secretly linking that confidential information to their social media accounts to deliver targeted advertising.

7.      Meta knew that by intentionally bypassing security and privacy settings in the Android operating system, in conjunction with the Meta Pixel—Meta's proprietary tracking and advertising tool—to de-anonymize Users by linking their web browsing activity to their identities within the Facebook and Instagram mobile apps, it was collecting and using Plaintiffs' and Class Members' Private Information without their consent to fulfill its own advertising purposes. The manner in which Meta's tracking tools illicitly capture user data is functionally indistinguishable from unauthorized and dangerous malware.

8.      Meta did not obtain Plaintiffs' and Class Members' prior consent before collecting their sensitive, confidential communications and Private Information.

9.      Meta's actions constitute an extreme invasion of Plaintiffs' and Class Members' right to privacy and violate federal and state statutory and common law.

10.      As a result of Meta's conduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) emotional distress and heightened concerns related to the release of Private Information to third parties; (iii) loss of the benefit of the bargain; (iv) diminution of value of the Private Information; (v) statutory damages and (vi) continued and ongoing risk to their Private Information. Plaintiffs and Class Members have a substantial risk of future harm, and thus injury in fact, due to the continued and ongoing risk of misuse of their Private Information by Meta.

CLASS ACTION COMPLAINT

11.    Plaintiffs seek, on behalf of themselves and a class of similarly situated persons, to remedy these harms and therefore assert statutory and common law claims against Meta as discussed below.

## **PARTIES**

**A. Plaintiffs**
**(1) Elizabeth Messenger (California)**

12.    Plaintiff Elizabeth Messenger is a natural person and citizen of California, currently residing in Kern County, California.

13.    Plaintiff Messenger purchased a Samsung Galaxy A15 Android phone in 2023.

14.    Plaintiff Messenger had also installed both the Instagram and Facebook apps on her phone during this period and was logged into her account during this period.

15.    Plaintiff Messenger cares deeply about her privacy and regularly uses the incognito mode function on Google Chrome when using it to browse websites. She does this in order to prevent ad tracking, cookies, and other online surveillance.

16.    Plaintiff Messenger regularly used the incognito mode function on her phone through September 2024 through present and visited at least one website that has a Meta Pixel installed.

17.    Plaintiff Messenger reasonably expected that her online communications with third party websites, especially in incognito mode or private browsing, were solely between herself and the website, and that such communications would not be transmitted or intercepted by a third party.

**(2) Ugochukwu Atulobi (California)**

18.    Plaintiff Ugochukwu Atulobi is a natural person and citizen of California, currently residing in Alameda County, California.

19.    Plaintiff Atulobi purchased a Samsung Galaxy s23+ Android phone in April 2024.

20.    Plaintiff Atulobi had also installed both the Instagram and Facebook apps on his phone during this period and was logged into his account during this period.

CLASS ACTION COMPLAINT

21.   Plaintiff Atulobi cares deeply about his privacy and regularly uses the incognito mode function on Google Chrome when using it to browse websites. He does this in order to prevent ad tracking, cookies, and other online surveillance.

22.   Plaintiff Atulobi regularly used the incognito mode function on his phone through September 2024 through present and visited at least one website that has a Meta Pixel installed.

23.   Plaintiff Atulobi reasonably expected that his online communications with third party websites, especially in incognito mode or private browsing, were solely between himself and the website, and that such communications would not be transmitted or intercepted by a third party.

**(3) Iveth Rodriguez (Illinois)**

24.   Plaintiff Iveth Rodriguez is a natural person and citizen of Illinois, currently residing in Cook County, Illinois.

25.   Plaintiff Rodriguez purchased a Samsung Galaxy Android phone in February 2024.

26.   Plaintiff Rodriguez had also installed both the Instagram and Facebook apps on her Android phone during this period and was logged into her account during this period.

27.   Plaintiff Rodriguez cares deeply about her privacy and regularly uses the incognito mode function on Google Chrome when using it to browse websites. She does this in order to prevent ad tracking, cookies, and other online surveillance.

28.   Plaintiff Rodriguez regularly used the incognito mode function on her phone through September 2024 through present and visited at least one website that has a Meta Pixel installed.

29.   Plaintiff Rodriguez reasonably expected that her online communications with third party websites, especially in incognito mode or private browsing, were solely between herself and the website, and that such communications would not be transmitted or intercepted by a third party.

**(4) Lorine Derham (Illinois)**

30.   Plaintiff Lorine Derham is a natural person and citizen of Illinois, currently residing in Peoria County, Illinois.

31.    Plaintiff Derham purchased a Samsung Galaxy S23 Android phone in 2023.

32.    Plaintiff Derham had also installed both the Instagram and Facebook apps on her phone during this period and was logged into her account during this period.

33.    Plaintiff Derham cares deeply about her privacy and regularly uses the incognito mode function on Google Chrome when using it to browse websites. She does this in order to prevent ad tracking, cookies, and other online surveillance.

34.    Plaintiff Derham regularly used the incognito mode function on his phone through September 2024 through present and visited at least one website that has a Meta Pixel installed.

35.    Plaintiff Derham reasonably expected that her online communications with third party websites, especially in incognito mode or private browsing, were solely between herself and the website, and that such communications would not be transmitted or intercepted by a third party.

**(5) Plaintiff Ara Sardarbegians (Pennsylvania)**

36.    Plaintiff Ara Sardarbegians is a natural person and citizen of Pennsylvania, currently residing in Allegheny County, Pennsylvania.

37.    Plaintiff Sardarbegians purchased a Google Pixel 9 Pro phone in September 2024.

38.    Plaintiff Sardarbegians had also installed both the Instagram and Facebook apps on his phone during this period and was logged into his account during this period.

39.    Plaintiff Sardarbegians cares deeply about his privacy and regularly uses the incognito mode function on Google Chrome when using it to browse websites. He does this in order to prevent ad tracking, cookies, and other online surveillance.

40.    Plaintiff Sardarbegians regularly used the incognito mode function on his phone through September 2024 through present, and visited at least one website that has a Meta Pixel installed.

41.    Plaintiff Sardarbegians reasonably expected that his online communications with third party websites, especially in incognito mode or private browsing, were solely between himself and

6

the website, and that such communications would not be transmitted or intercepted by a third party.

**(6) Mark Camplese (Pennsylvania)**

42.    Plaintiff Mark Camplese is a natural person and citizen of Pennsylvania, currently residing in Lawrence County, Pennsylvania.

43.    Plaintiff Camplese purchased a Samsung 25 Ultra phone in January 2025.

44.    Plaintiff Camplese had also installed both the Instagram and Facebook apps on his phone during this period and was logged into his account during this period.

45.    Plaintiff Camplese cares deeply about his privacy and regularly uses the incognito mode function on Google Chrome when using it to browse websites. He does this in order to prevent ad tracking, cookies, and other online surveillance.

46.    Plaintiff Camplese regularly used the incognito mode function on his phone through September 2024 through present and visited at least one website that has a Meta Pixel installed.

47.    Plaintiff Camplese reasonably expected that his online communications with third party websites, especially in incognito mode or private browsing, were solely between himself and the website, and that such communications would not be transmitted or intercepted by a third party.

**(7) Tatiana Brodiski (Washington)**

48.    Plaintiff Tatiana Brodiski is a natural person and citizen of Washington, currently residing in King County, Washington.

49.    Plaintiff Brodiski purchased a Samsung Galaxy Android phone in January 2023.

50.    Plaintiff Brodiski had also installed both the Instagram and Facebook apps on her phone during this period and was logged into her account during this period.

51.    Plaintiff Brodiski cares deeply about her privacy and regularly uses the incognito mode function on Google Chrome when using it to browse websites. She does this in order to prevent ad tracking, cookies, and other online surveillance.

52.    Plaintiff Brodiski regularly used the incognito mode function on her phone through

CLASS ACTION COMPLAINT

September 2024 through present and visited at least one website that has a Meta Pixel installed.

53.    Plaintiff Brodiski reasonably expected that her online communications with third party websites, especially in incognito mode or private browsing, were solely between herself and the website, and that such communications would not be transmitted or intercepted by a third party.

54.    Defendant Meta Platforms, Inc. is a global technology company that provides social media platforms and communication services to users worldwide as well as advertising services to millions of companies. Meta is comprised of several well-known platforms, including Facebook, Instagram, Threads, and WhatsApp. Meta is incorporated in Delaware with its principal place of business located at 1 Hacker Way, Menlo Park, CA 94025.

## JURISDICTION

55.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than one hundred (100) putative class members defined below, and minimal diversity exists because at least one Plaintiff is a citizen of a state different from the citizenship of Defendant. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

56.    This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in this District.

## VENUE

57.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events or omissions giving rise to the claims occurred in this district – this is where Defendant's principal place of business is located and conducts substantial business. Meta's conduct, including its unlawful tracking and data collection of millions of nationwide users as described here, was occurring in this District.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FACTUAL BACKGROUND

**A.  Meta's Use of Tracking Pixels in Advertising Business**

58.     Meta is one of the largest advertising companies in the country, with over 3.43 billion active daily users across its core products in the first quarter of 2025.[3]

59.     Realizing the value of having direct access to millions of consumers, in 2007, Meta, at that time Facebook, began monetizing its platform by launching "Facebook Ads," proclaiming it to be a "completely new way of advertising online" that would allow "advertisers to deliver more tailored and relevant ads."[4]

60.     Given the highly specific data used to target specific users, it is no surprise that millions of companies and individuals utilize Meta's advertising services—a fact that Meta boasts, claiming that its "personalized ad technologies" were "linked to nearly $550 billion in economic activity and 3.4 million jobs in 2024."[5]

61.     One of its most powerful advertising tools is Meta Pixel, formerly known as Facebook Pixel, which launched in 2015.

62.     The Meta Pixel is highly pervasive, especially among popular websites—it is present in about 30 percent of the top 100,000 websites.[6]

63.     Ad targeting has been extremely successful due, in large part, to Facebook's ability to

---

[3]     Stacy Jo Dixon, *Cumulative number of daily Meta product users as of 1st quarter 2025*, STATISTA (May 15, 2025), https://www.statista.com/statistics/1092227/facebook-product-dau/#:~:text=Meta's%20family%20of%20apps%20continues,influence%20in%20connecting%20people%20worldwide.

[4]     *Facebook Unveils Facebook Ads*, META (November 6, 2007), https://about.fb.com/news/2007/11/facebook-unveils-facebook-ads/.

[5] Joel Kaplan, *Over Half a Trillion Dollars, 3.4 Million U.S. Jobs Linked to Meta's AI-Driven Ads Technologies*, META (May 13, 2025), https://about.fb.com/news/2025/05/over-half-trillion-dollars-3-million-us-jobs-linked-metas-ai-driven-ads-technologies/.

[6] Julia Angwin, *Facebook's Pervasive Pixel*, THE MARKUP (Aug. 20, 2022), https://themarkup.org/newsletter/hello-world/facebooks-pervasive-pixel; Tony Fyler, *Meta pixel at heart of data privacy cases – again*, TECH HQ (July 24, 2023), https://techhq.com/2023/07/why-is-the-meta-pixel-at-heart-of-data-privacy-cases/.

9

target people at a granular level. "Among many possible target audiences, Facebook offers advertisers, [for example,] 1.5 million people 'whose activity on Facebook suggests that they're more likely to engage with/distribute liberal political content' and nearly seven million Facebook users who 'prefer high-value goods in Mexico.'"[7]

64.    For Defendant, the Meta Pixel acts as a conduit of information, obtaining web browsing information through scripts running in the user's internet browser. The information is sent in data packets labeled with private information, including the user's IP address.

65.    If the user has a Facebook account, the Private Information collected is linked to the individual Users' Facebook account. For example, if the User is logged into their Facebook account when the User visits a website where the Meta Pixel is installed, many common browsers will attach third-party cookies allowing Meta to link the data collected by Meta Pixel to the specific Facebook user.

66.    Meta encourages users to create only a single Facebook account to consolidate user behavior across its ecosystem and the tracked activities in order to build a single, highly detailed profile of each user's preference, characteristics, habits, and connection, allowing Meta to monetize this information, and increase its advertising revenues.

67.    To do so, Meta promotes "authentic identity representation," encouraging users to create one Facebook account using "the name they go by in everyday life that represents their authentic identity."[8] Meta even expressly prohibits maintaining more than one account because such actions are against Facebook Guidelines.[9]

---

[7]    Natasha Singer, *What You Don't Know about How Facebook Uses Your Data*, N.Y. TIMES (April    11,    2018),    https://www.nytimes.com/2018/04/11/technology/facebook-privacy-hearings.html.

[8] *Authentic Identity Representation*, META, https://transparency.meta.com/policies/community-standards/authentic-identity-representation.

[9] *Can I create multiple Facebook accounts?*, META, https://www.facebook.com/help/975828035803295/.

10

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

68.    When creating a Facebook account, users are required to enter personal, identifiable information such as their full name, email or mobile phone number, date of birth, and gender.[10]

69.    A Facebook account is linked to an individual's identity through their provided email address or phone number.

70.    Meta markets its advertising services by highlighting their ability to target users—an ability it acquires by surveilling user activity both on and off its social media platforms. Meta boasts: "Our ads can be targeted to people by location, age, gender, interests, demographics, behavior and connections. You can also use more advanced targeting tools like lookalike audiences, which lets you target people similar to the people who already engage with your business, or you can layer your targeting options to select a more specific audience."[11]

71.    A recent report revealed that tracking code that Meta embedded into millions of websites is "de-anonymizing visitors by abusing legitimate Internet protocols."[12] As a result, Meta is able to exploit Chrome and other browsers on the Android operating system in order to "surreptitiously send unique identifiers to native apps installed on a device."[13] This abuse allows Meta to convert web identifiers to mobile app user identities and violate the privacy of millions of users, including those using Incognito Mode on the Chrome browser to keep their web activity private.

72.    Without users' knowledge or consent, Meta's surreptitiously collected data on them that necessarily reveals detailed and intimate map of people's thoughts, behaviors, and even

---

[10] *Creating an Account*, META, https://www.facebook.com/help/570785306433644/?helpref=hc_fnav.

[11] *Why advertise on Facebook, Instagram and other Meta technologies,* META, https://www.facebook.com/business/help/205029060038706.

[12] Dan Goodin, *Meta and Yandex are de-anonymizing Android users' web browsing identifiers*, ARS TECHNICA (June 3, 2025), https://arstechnica.com/security/2025/06/meta-and-yandex-are-de-anonymizing-android-users-web-browsing-identifiers/.

[13] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

significant life changes. By monitoring individuals' web browsing specifically where the user sought to keep it private by using incognito mode to avoid ad trackers and cookies could reveal their use of financial services – banking applications, credit repair, debt-related help; legal advice pages such as divorce, immigration, whistleblower resources; religious and political content; LGBTQ+ support or advocacy pages, and more. Through its technology bypassing privacy setting of Android phones, Meta tracked which pages users visited, how long they stayed, what they clicked, what they submitted/entered on a website forms including private portals allowing for communications with financial advisors or other sensitive communications, and how they interacted with that page. In its efforts to track people, and thus increase its advertising revenues, it has grossly violated the privacy of millions by secretly implementing code in its Facebook and Instagram apps to create a bypass on Android phones that allows the Meta Pixel to connect directly with the Facebook or Instagram app. This allowed Meta to know the identity of the web user, even when ad blocking or private browsing mode. Meta did this secretly and without the knowledge or permission of the users or even Android's developer. Meta's conduct continued unchecked for nearly a year until independent researchers exposed the scheme. This was not a glitch. It was a strategic choice to gather as much information on the users as possible to increase their profits – at the expense of millions of users' privacy.

73.    Meta earned $41.4 billion in advertising revenue during the first quarter of 2025—a consequence of its capacity to identify and target its users by monitoring their browsing activity.[14]

74.    According to a survey of Americans conducted by research firm Censuswide, 52 percent of Americans in 2024 used an ad blocker, up from 34 percent in 2022.[15] Similarly, around 46 percent of Americans have used private browsing—which enabled users to protect themselves

---

[14] Trishla Ostwal, *Meta Tops Q1 Expectations With $42B in Revenue, Zuckerberg Talks Up Meta AI App,* ADWEEK, https://www.adweek.com/commerce/meta-q1-earnings-report-revenue/.
[15] Thomas Claburn, *Majority of Americans now use ad blockers,* THE REGISTER, https://www.theregister.com/2024/03/27/america_ad_blocker/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

from online ad trackers—at least once in their lifetime.[16]

75.    Such actions from users demonstrate significant concern about how their data is being collected and tracked, particularly by companies like Meta, to whom they provide substantial personal information and which seem to have an unparalleled ability to create personalized ads by monitoring user activity.

76.    Given the growing prevalence of these preventative actions from users, it is clear why Meta has an increasing incentive to identify and implement mechanisms to counteract them—these actions interfere with Meta's ability to serve targeted ads, ultimately hindering its ability to conduct business.

**B. Meta's Method of Transmitting Plaintiffs' & Class Members' Private Information via the Meta Pixel**

77.    Web browsers are software applications that allow consumers to navigate the web and view and exchange electronic information and communications over the internet. Each "client device" (such as computer, tablet, or smart phone) accesses web content through a web browser (e.g., Google's Chrome browser, Mozilla's Firefox browser, Apple's Safari browser, and Microsoft's Edge browser).

78.    Every website is hosted by a computer "server" that holds the website's contents and through which the entity in charge of the website exchanges communications with Internet users' client devices via web browsers.

79.    Web communications consist of HTTP Requests and HTTP Responses, and any given browsing session may consist of thousands of individual HTTP Requests and HTTP Responses, along with corresponding cookies.

80.    An HTTP Request is an electronic communication sent from the client device's

---

[16] *Browser Statistics: Catching the Best Surf on the Web,* DATAPROT, https://dataprot.net/statistics/browser-statistics/.

**CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

browser to the website's server. GET Requests are one of the most common types of HTTP Requests.

81.     An HTTP Response is an electronic communication that is sent as a reply to the client device's web browser from the host server in response to an HTTP Request. HTTP Responses may consist of a web page, another kind of file, text information, or error codes, among other data.

82.      In addition to specifying a particular URL (i.e., web address), GET Requests can also send data to the host server embedded inside the URL, and can include cookies.

83.     Cookies are small text files that can be used to store information on the client device which can later be communicated to a server or servers. Cookies are sent with HTTP Requests from client devices to the host server. Some cookies are "third-party cookies" which means they can store and communicate data when visiting one website to an entirely different website.

84.     A user's HTTP Request essentially asks a website to retrieve certain information (such as a retailer's "View Cart" or "Product Details" page), and the HTTP Response renders or loads the requested information in the form of "Markup" (the pages, images, words, buttons, and other features that appear on the user's screen as they navigate a website on their device).

85.     Every website is comprised of Markup and "Source Code." Source Code is a set of instructions that commands the website visitor's browser to take certain actions when the web page first loads or when a specified event triggers the code.

86.     Source Code may also command a web browser to send data transmissions to third parties in the form of HTTP Requests quietly executed in the background without notifying the web browser's User. The Meta Pixel uses Source Code that does just that. The Meta Pixel acts much like a traditional wiretap.

87.     Once the webpage is loaded into the user's browser, the Meta Pixel will trigger the tap, which intercepts those communications and transmits those communications to third parties, including Meta. Such conduct occurs on a continuous, and not sporadic, basis.

14

CLASS ACTION COMPLAINT

88.    The Meta Pixel can identify the user and is sent with each intercepted communication to ensure the third-party can uniquely identify the user associated with the Private Information intercepted.

89.    Americans value their privacy. For that reason, they employ anonymized browsing and expect that their online activities are not being surveilled particularly during their sessions in incognito mode.

90.    Yet, Meta employed a workaround collecting Android users' de-anonymized browsing information and linking it to their Facebook and Instagram profiles – despite the users' reasonable privacy expectations.

91.    Meta understands that increasing numbers of web users, wary of constant online surveillance, have been increasingly using ad blockers as well as using "private browsing" or "incognito mode" which allows the user to attempt to block trackers, cookies, and other web surveillance, keeping their web browsing more secure.

92.    However, this interferes with Meta's goal of constant web surveillance, which improves its advertising tracking, substantially increasing its profits. This led to Meta seeking new and ingenious ways of tracking users who were taking steps to keep their web browsing private, so that Meta could track them, profile them, and serve ads to them.

**C.  Meta's Method of De-Anonymizing Android Users**

93.    Beginning in September 2024, Meta used a software exploit to de-anonymize website visitors using the Android mobile operating system by embedding tracking code into millions of websites and abusing legitimate Internet protocols by causing Chrome and other browsers to send unique identifiers to the Facebook and Instagram apps installed on Users' personal devices.

94.    Meta employed surreptitious tracking, that enabled Meta to bypass core security and privacy protections provided by the Android operating system and the browsers that run on it.

95.    For example, Meta has been able to bypass Android "sandboxing" – a security

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

mechanisms that is intend to maintain users' privacy and prevent companies like Meta from spying on the user's activities - preventing access to sensitive user data or privileged system resources.[17]

96.    According to Android, this sandboxing system "isolates apps from each other and protects apps and the system from malicious apps" by "assign[ing] a unique user ID (UID) to each Android app and run[ning] it in its own process." Consequently, "[i]f app A tries to do something malicious, such as read app B's data or dial the phone without permission, it's prevented from doing so because it doesn't have the appropriate default user privileges."[18]

97.    This system, therefore, is supposed to prevent an app installed on an Android device, such as Meta's Instagram or Facebook, from accessing data collected from the users' activities on websites and third-party applications without users' authorized permissions – which Meta was able to bypass.

98.    When using private browsing mode that avoids downloading the Meta Pixel or tracking cookies, the web user is able to avoid many types of web surveillance, ensuring that their communications are solely between them and the website they are using. This also, when working properly, would prevent the Meta Pixel from connecting the website usage with a specific Facebook profile.

99.    Bypassing this system is also expressly prohibited by Google's "terms of service for its Play marketplace and the privacy expectations of Android users." This workaround was described by a Google representative as an action that "blatantly [violated Google's] security and privacy principles."[19]

---

[17] Dan Goodin, *Meta and Yandex are de-anonymizing Android users' web browsing identifiers,* ARSTECHNICA, https://arstechnica.com/security/2025/06/meta-and-yandex-are-de-anonymizing-android-users-web-browsing-identifiers/.

[18] *Application Sandbox,* ANDROID OPEN SOURCE PROJECT, https://source.android.com/docs/security/app-sandbox.

[19] Dan Goodin, *Meta and Yandex are de-anonymizing Android users' web browsing identifiers,* ARSTECHNICA, https://arstechnica.com/security/2025/06/meta-and-yandex-are-de-anonymizing-android-users-web-browsing-identifiers/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

100. Meta, seeking to avoid users' privacy attempts, discovered a way to bypass security and privacy settings set by Android, and break out of the Android sandbox that divides the mobile content and web content, enabling Meta to pass cookies and other identifiers from Firefox and Chromium-based browsers to native Android apps for Facebook and Instagram.

101. Through this bypass, Meta can then link a user's private browsing history to the personal social media account logged into on the app, providing the user's real identity. This is despite the fact the user is making clear attempts to prevent Meta from obtaining that information.

102. The "_fbp cookie" is a browser cookie set by Meta Pixel to track individual users across websites, linking their web activity to their Facebook or Instagram profiles. The cookie assigns a unique ID to each website visitor, which is used to monitor which pages they visit and how they interact with various websites, enabling Meta to use such data to personalize ads for users.[20]

103. Meta de-anonymizes a user's web browsing history through a multi-step process that circumvents conventional privacy protections. First, after a user logs into Meta's application, either the Facebook or Instagram app, which remains opened and logged in indefinitely. The application then establishes a listening service that runs in the background on the user's device.

104. Subsequently, when the user browses the internet and visits a third-party website containing Defendant's Meta Pixel tracking code, that code establishes a covert communication channel with the listening application on the same device using an open port. Through this channel, the Meta Pixel transmits a unique web tracking identifier from the browser directly to the backgrounded application.

105. A port, such as the TCP and UDP ports, is like a "logical address for different types of internet communication." Each type of internet service, such as websites or email, has a port

---

[20] *ClickID and the fbp and fbc Parameters,* META,
https://developers.facebook.com/docs/marketing-api/conversions-api/parameters/fbp-and-fbc/.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

where data is sent and received. Every service uses a specific port to manage its data.[21]

106.    The application then relays this web identifier to Meta's servers, bundling it with the user's persistent account identifiers. This final step allows Meta to directly link the user's supposedly anonymous web browsing activity to their real, authenticated identity, effectively eliminating the separation between their web browsing and their personal application usage without their knowledge or consent.

107.    Most of the third-party websites containing the embedded Meta Pixel do not request user permission before loading the Meta Pixel, so it often tracks without the user's explicit knowledge and permission.

108.    WebRTC, or Web Real-Time Communication, is a technology that enables websites to capture and stream audio or video media, in addition to exchanging arbitrary data between browsers.[22] SDP ("Session Description Protocol) is a data structure used to describe WebRTC connections.

109.    SDP munging is a complicated technique in which JavaScript code modifies the SDP content to insert tracking data such as the _fbp cookie.[23]

110.    Meta thus inserts the _fbp cookie into the SDP, causing the browser to send that data as part of a STUN—a network protocol used by WebRTC to discover the device's connectivity details—request to the device.

111.    Because the native Facebook or Instagram app is listening on that port, it intercepts the _fbp cookie and links it to the user's social media profile.

112.    The Meta Pixel also transmits the _fbp value directly to Meta's tracking endpoint with

---

[21] *TCP/IP Ports and Its Applications,* GEEKS FOR GEEKS,
https://www.geeksforgeeks.org/tcp-ip-ports-and-its-applications/.
[22] *WebRTC API,* MDN WEB DOCS,
 https://developer.mozilla.org/en-US/docs/Web/API/WebRTC_API.
[23] *Disclosure: Covert Web-to-App Tracking via Localhost on Android*, GIT HUB,
https://localmess.github.io/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

other user data, including the address of the current webpage, details about the browser and device, and other metadata.

113.    The Meta Pixel is installed on approximately 30% of the world's most popular websites.[24] Specifically, it is reported that there are 6,085,489 currently live websites with the Meta Pixel installed, and 9,577,747 sites that used Meta Pixel previously.[25] Some popular websites include realtor.com, redcross.org, and dailydot.com.[26]

114.    The ubiquity of the Meta Pixel on healthcare websites has also raised alarm. In 2022, an investigation revealed that the Meta Pixel was found embedded in the websites of 33 of America's top 100 hospitals.[27]

115.    While Meta has claimed that it ceased the specific software exploit described here, there is no reason it could not simply change to a slightly altered technique since it relies on the exploitation of open ports in the Android operating system, of which there are thousands. This was made clear by the researchers who discovered Meta's exploit techniques, stating that "the current fixes are so specific to the code in the Meta and Yandex trackers that it would be easy to bypass them with a simple update."[28] Thus, without court intervention, there is nothing to prevent Meta from continuing its gross violations of privacy.

116.    Additionally, on information and belief, Meta continues to store and profit from

---

[24] *Meta pixel at heart of data privacy cases – again*, TECH HQ (July 24, 2023), https://techhq.com/2023/07/why-is-the-meta-pixel-at-heart-of-data-privacy-cases/.
[25] Facebook Pixel Usage Statistics, BUILT WITH https://trends.builtwith.com/analytics/Facebook-Pixel.
[26] *Websites using Facebook Pixel*, BUILT WITH, https://trends.builtwith.com/websitelist/Facebook-Pixel.
[27] *Facebook Is Receiving Sensitive Medical Information from Hospital Websites*, THE MARKUP (June 16, 2022) https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites.
[28] Dan Goodin, *Meta and Yandex are de-anonymizing Android users' web browsing identifiers*, ARS TECHNICA (June 3, 2025), https://arstechnica.com/security/2025/06/meta-and-yandex-are-de-anonymizing-android-users-web-browsing-identifiers/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Plaintiffs' and Class Members' wrongfully and illegally obtained information, which Plaintiffs and Class Members seek a court order requiring that information be purged from Meta's system. The fact that Meta continues to store and exploit this information means that Plaintiffs and the Class Members are also reliant on Meta to avoid selling or sharing that information, and cannot do so without a court order providing prospective relief. Meta also can re-activate its trackers at any time without Plaintiffs knowledge, which means that without injunctive and declaratory relief, Plaintiffs have no way of controlling their own information and privacy – that Meta has intentionally designed technology to bypass.

**D. Meta's Interception and Data Tracking Practices of Users' Information Without Consent.**

117.    Meta's surreptitious tracking of users was not accidental. It is a result of planned and tested technology, which Meta maintained over months. This technology was *designed* to bypass Android privacy settings and permissions. With its performance metrics and tracking dashboards, Meta was aware of the vast tracking of information from which it was benefitting financially.

118.    Meta has been also previously warned by regulators and courts of this type of behavior and has been sued repeatedly for its surreptitious tracking.

119.    For example, in 2012, Meta (then Facebook) entered into a consent agreement with the Federal Trade Commission ("FTC") after the FTC alleged that Facebook deceived consumers by misrepresenting their ability to control their privacy and personal information and by sharing that information in violation of the privacy choices those consumers made. As part of that agreement, Facebook agreed to make substantial changes prohibiting misrepresentation by Facebook regarding privacy and required clear and prominent privacy notices, limitations on sharing information with app developers, the implementation of a comprehensive privacy program and third-party audits and

oversight by the FTC.[29]

120.    Despite the 2012 Agreement, Meta continued to violate its users' privacy rights and repeatedly breached the prior FTC agreement. This resulted in the FTC taking further action in 2019 and Facebook agreeing to "pay a record-breaking $5 billion penalty, and submit to new restrictions and a modified corporate structure that will hold the company accountable for the decisions it makes about its users' privacy" based on Meta's failure to comply with the 2012 consent agreement.[30]

121.    Yet again, Meta failed to comply with the 2012 and 2019 consent agreements that it had entered into with the FTC, causing the FTC in 2023 propose revoking the 2019 order and reopening the case to increase the fine, force additional privacy changes, and increase monitoring to force Meta to comply with the prior orders.[31]

---

[29] *In re Facebook, Inc.*, C-4365, 2012 FTC LEXIS 135 (F.T.C. July 27, 2012), https://www.ftc.gov/sites/default/files/documents/cases/2012/08/120810facebookdo.pdf

[30] *FTC Imposes $5 Billion Penalty, Sweeping New Privacy Restrictions on Facebook*, FEDERAL TRADE COMMISSION, (July 24, 2019), https://www.ftc.gov/news-events/news/press-releases/2019/07/ftc-imposes-5-billion-penalty-sweeping-new-privacy-restrictions-facebook.

[31] *In re Facebook, Inc.*, C-4365 (F.T.C. May 3, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/C4365-Commission-Order-to-Show-Cause-%28Redacted-Public%29.pdf

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

122.   A synopsis of *some of* Meta's data collection practices and data tracking without users' consent in the last decade is depicted below:

# META'S DATA TRACKING WITHOUT CONSENT

**① Locating Tracking**

**2015-2022**

Meta used IP addresses, Wi-Fi, and cell tower signals to obtain users' locations in disregard of users' preferences set against such tracking by disabling Location Services on their devices. Meta subsequently settled class action against it for $37.5 million

**② Onavo Protect VPN**

**2016-2018**

Meta acquired and used the Onavo VPN app originally intended as encryption solution, but instead used to collect user data even when it was switched off. Apple banned the Onavo app in 2019.

**③ Project Atlas**

**2016-2019**

Facebook paid users - including 13 year old teens - to install a "Facebook Research" VPN that allowed the company to absorb *all* of a user's phone and web activity through Instagram/Snapchat, without fully explaining how invasive the tracking was, and allowing Facebook to decrypt even encrypted traffic. Apple later blocked the iOS app.

**④ Cambridge Analytica**

**2018**

50 million Facebook profiles were harvested for Cambridge Analytica to build a software program to predict and influence voter choices at the ballot box, resulting in a $5 billion FTC fine and a $725 million class action settlement.

**⑤ South Korea User Profiling**

**2018-2022**

Meta unlawfully collected sensitive information about around 980,000 users, including their religion, political views, and whether they were in same-sex unions. Meta shared the data with more than 4,000 advertisers, resulting in a ₩21.6 B fine (~$15 M USD) from Korean regulators.

**⑥ FTC Penalty**

**2019**

Meta violated 2012 FTC Consent order, surreptitiously gaining access to users' private information leading to its subsequent $5 billion penalty.

**⑦ GCPR Violations**

**2023**

Meta was fined €1.2 billion by the European Data Protection Board (EDPB) for violating the General Data Protection Regulation (GDPR), specifically regarding the illegal transfer of EU users' personal data to the US.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

123.    Meta's long history of privacy scandals and surreptitious tracking – is a part of its business model. Meta has repeatedly pushed boundaries on user tracking and data collection, violating user trusts, and yet, despite paying billions of fines and settlements, it continues to find ways to bypass privacy settings to gather private information on the users' identities, views, behaviors, sexual orientation, health concerns, religious practices, and more – as it has done here.

## CLASS ALLEGATIONS

124.    **Class Definition:** Plaintiffs bring this action on behalf of themselves and on behalf of various classes of persons similarly situated, as defined below, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure:

125.    The Nationwide Class that Plaintiffs seek to represent is defined as:

**Nationwide Class**: 1) All users of an Android device in the United States 2) who had the Facebook or Instagram applications installed on their devices, 3) and visited a website with the Meta Pixel installed on that device, 4) using a private browsing mode between September 2024 and June 3, 2025, or at any time within the applicable statute of limitations period(s)

126.    The California Subclass that Plaintiffs seek to represent is defined as:

**California Subclass:** 1) All users of an Android device in the State of California 2) who had the Facebook or Instagram applications installed on their devices, 3) and visited a website with the Meta Pixel installed on that device, 4) using a private browsing mode between September 2024 and June 2, 2025, or at any time within the applicable statute of limitations period(s)

127.    The Illinois Subclass that Plaintiffs seek to represent is defined as:

**Illinois Subclass:** 1) All users of an Android device in the State of Illinois 2) who had the Facebook or Instagram applications installed on their devices, 3) and visited a website with the Meta Pixel installed on that device, 4) using a private browsing mode between September 2024 and June 3, 2025, or at any time within the applicable statute of limitations period(s)

128.    The Pennsylvania Subclass that Plaintiffs seek to represent is defined as:

**Pennsylvania Subclass:** 1) All users of an Android device in the Commonwealth of Pennsylvania 2) who had the Facebook or Instagram applications installed on their devices, 3) and visited a website with the Meta Pixel installed on that device, 4) using a private browsing mode between September 2024 and June 3, 2025, or at any time within the applicable statute of limitations period(s)

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

129.   The Washington Subclass that Plaintiffs seek to represent is defined as:

**Washington Subclass:** 1) All users of an Android device in the State of Washington 2) who had the Facebook or Instagram applications installed on their devices, 3) and visited a website with the Meta Pixel installed on that device, 4) using a private browsing mode between September 2024 and June 3, 2025, or at any time within the applicable statute of limitations period(s)

130.   The Nationwide Class and the State Subclasses are referred to collectively as the "Classes." Excluded from the Classes are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's officer or director, any successor or assign and any Judge who adjudicates this case, including their staff and immediate family.

131.   Plaintiffs reserve the right under Federal Rule of Civil Procedure 23 to amend or modify the Classes to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues. Plaintiffs reserve the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

132.   The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

133.   The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

134.   **Numerosity:** The exact number of Class Members is not available to Plaintiffs, but it is clear that individual joinder is impracticable. Millions of people throughout the United States as well as hundreds of thousands in the State Subclasses likely meet the definition of the Class. Class Members can be identified through Defendant's records or by other means.

135.   **Commonality:** Commonality requires that the Class Members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class Members

CLASS ACTION COMPLAINT

as to whether Defendant disclosed to third parties their Private Information without authorization or lawful authority.

136. **Typicality:** Plaintiffs' claims are typical of the claims of other Class Members in that Plaintiffs and the Class Members sustained damages arising out of Defendant's uniform wrongful conduct and data sharing practices.

137. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs' claims are made in a representative capacity on behalf of the Class Members. Plaintiffs have no interests antagonistic to the interests of the other Class Members. Plaintiffs have retained competent counsel to prosecute the case on behalf of Plaintiffs and the Class. Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the Class Members.

138. **Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and Class Members, and those questions predominate over any questions that may affect individual Class Members. Common questions and/or issues for Class members include, but are not necessarily limited to the following:

a. Whether Meta violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq.*;

b. Whether Meta's acts and practices violated California's Constitution, Art. 1, § 1;

c. Whether Meta's acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*;

d. Whether Meta's acts and practices violated the Illinois Eavesdropping Act, ILCS 720 § 5/14-1, *et seq.*;

e. Whether Meta's acts and practices violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, Pa. Cons. Stat. § 5701, *et seq.*;

25

**CLASS ACTION COMPLAINT**

f.    Whether Meta's acts and practices violated the Washington Privacy Act, Wash. Rev. Code Ch. 9.73;

g.    Whether Meta's unauthorized interception and collection of Plaintiffs' and Class Members' Private Information was willful;

h.    Whether Meta was authorized by Plaintiffs and Class Members to intercept or collect their Private Information;

i.    Whether Meta intentionally bypassed technical protections to prevent the linking of Plaintiffs' and Class Members' web browsing data with their personal identifiers that could be linked through its applications;

j.    Whether Meta misrepresented that it would not surreptitiously obtain Plaintiffs' and Class Members' private online browsing information, when using a third-party browser;

k.    Whether Meta linked and de-anonymized the Private Information of Plaintiffs and Class Members, specifically their web browsing history, without adequate notification, disclosure, or consent, in violation of its own privacy policy and applicable state and federal privacy laws;

l.    Whether Meta was unjustly enriched by collecting, linking, and using de-anonymized web browsing data for commercial benefit, including but not limited to improving its advertising and analytics products;

m.    Whether the de-anonymization of Plaintiffs' and Class Members' web browsing history was the result of a uniform and standard technical practice implemented by the Meta;

n.    Whether Meta had a duty to disclose the specific technical means by which it could link Plaintiffs' and Class Members' web browsing data to their identity and failed to do so;

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

o.    Whether Meta obtained or shared information it intercepted while Plaintiffs and Class Members were browsing in private mode on a third-party browser;

p.    Whether Meta shared Plaintiffs' and Class Members' browsing activities with any other third parties without their consent;

q.    Whether Meta used the information that it obtained through the allegedly unlawful conduct for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes;

r.    Whether Meta violated Plaintiffs' and Class Members' privacy rights;

s.    Whether Meta violated Plaintiffs' and Class Members' property rights as they relate to ownership of their personal information;

t.    Whether Plaintiffs and Class Members are entitled to actual damages, enhanced damages, punitive damages, statutory damages, or other monetary remedies provided by equity and law;

u.    Whether injunctive and declaratory relief, restitution, disgorgement, and other equitable relief is warranted.

139.  **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class Members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Meta's actions. Thus, it would be virtually impossible for the individual Class Members to obtain effective relief from Meta's misconduct. Even if Class Members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

## COUNT ONE

**VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA")**

**18 U.S.C. § 2511(1), *et seq.***

**Unauthorized Interception, Use, and Disclosure**

***(On behalf Plaintiffs and the Nationwide Class)***

140.    Plaintiffs herein repeat, reallege, and fully incorporate paragraphs 1-54 and 58-123 as if fully stated herein.

141.    The ECPA protects both sending and receipt of communications.

142.    18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

143.    Electronic Communications are "transfer[s] of signs, signals, writing, . . . data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

144.    The transmissions of Plaintiffs' Private Information to third party websites qualifies as "communications" under the ECPA's definition of 18 U.S.C. § 2510(12) because they involve communication between Plaintiffs' and third-party websites and service providers. Meta was able to gather significant "content" of Plaintiffs' communications including – who are the parties to the communications, the precise text of search queries, personally identifying information (such IP addresses, Facebook IDS, browser fingerprints, unique identifiers), the precise text of information generated when individuals made their appointments with accountants, financial advisors, and other professionals handling confidential information, the precise text of communications about billing

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

and payment, the precise text of specific buttons on websites that Meta tracked, including log-ins, registrations, requests for appointment and more. This provides any eavesdropper, like Meta, with the ability to gather enormous amounts of information about the Plaintiffs' personal life and actions.

145.    The ECPA defines content, when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

146.    The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."

147.    The ECPA defines "electronic, mechanical, or other device" as "any device . . . which can be used to intercept a[n] . . . electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

a.    Plaintiffs' and Class Members' browsers;

b.    Plaintiffs' and Class Members' computing devices;

c.    Meta's web-servers;

d.    The software exploit used by Meta to bypass Android security; and

e.    The Pixel code deployed by Meta to effectuate the sending and acquisition of private communications in conjunction with the software exploit.

148.    By using the Meta Pixel and the software exploit, Meta intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

149.    Specifically, Meta intercepted Plaintiffs' and Class Members' electronic communications – Private Information - via the Meta Pixel and Facebook and Instagram apps by using malicious code that exploited Android, to track, store, and unlawfully misuse Plaintiffs' and Class Members' Private Information for commercial purposes.

150.   By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiffs and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Meta violated 18 U.S.C. § 2511(1)(d).

151.   Meta intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, invasion of privacy, among others.

152.   Meta was not a party to the communications based on their unauthorized duplication and transmission of communications with Plaintiffs and the Class.

153.   Meta's acquisition of Plaintiffs' and Class Members' communications that were unlawfully intercepted was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and individual States nationwide.

154.   Plaintiffs and Class Members have suffered damages as a direct and proximate result of Meta's invasion of privacy in that:

    a.   Learning that Meta has intruded upon, intercepted, transmitted, shared, and used their Private Information for commercial purposes has caused Plaintiffs and the Class Members to suffer emotional distress;

    b.   Meta received substantial financial benefits from their use of Plaintiffs' and the Class Members' Private Information without providing any value or benefit to Plaintiffs or the Class Members; and,

    c.   The diminution in value of Plaintiffs' and Class Members' Private Information and the loss of privacy due to Meta secretly obtaining private communications that Meta was not an intended party to, and that Plaintiffs and Class Members intended to remain private.

CLASS ACTION COMPLAINT

155.   Meta intentionally used the wire or electronic communications to increase their profit margins. Defendant specifically used the Meta Pixel and malicious code to track and utilize Plaintiffs' and Class Members' private browsing for financial gain and to increase their ad tracking and sales.

156.   Meta was not acting under color of law to intercept Plaintiffs' and the Class Members' wire or electronic communication.

157.   Plaintiffs and Class Members did not authorize Meta to acquire the content of their communications for purposes of invading their privacy via the Meta Pixel or software exploit.

158.   Any purported consent that Meta received from Plaintiffs and Class Members was not valid.

159.   In sending and acquiring the content of Plaintiffs' and Class Members' communications relating to the browsing of third-party websites while in incognito or private mode, Meta's purpose was tortious, criminal, and designed to violate federal and state legal provisions including a knowing intrusion into a private, place, conversation, or matter that would be highly offensive to a reasonable person.

160.   As a result of Meta's violation of the ECPA, Plaintiffs and the Class are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable and declaratory relief requiring Meta to cease these practices and delete the unlawfully gathered information, compensatory and punitive damages, and attorney's fees and costs.

161.   The declaratory and injunctive relief sought in this case includes, but is not limited to:

a.   Entering a declaratory judgment against Meta—declaring that Meta's interception of Plaintiffs' and Class Members' Private Information is in violation of the law;

b.   Entering an injunction against Meta:

i.   Preventing Meta from sharing Plaintiffs' and Class Members' Private Information and requiring the unlawfully gathered information be destroyed;

ii.  Requiring Meta to alert and/or otherwise notify all users of what information is, or was, collected, used, stored, and shared;

iii. Requiring Meta to provide clear disclosure of their practices concerning data collection from its users, as well as uses of such data; and,

iv.  Requiring that Meta permanently cease its unlawful collection of data.

## COUNT TWO

## INVASION OF PRIVACY

### *(On behalf Plaintiffs and the Nationwide Class)*

162.   Plaintiffs herein repeat, reallege, and fully incorporate paragraphs 1-54 and 58-123 as if fully stated herein.

163.   Plaintiffs and Class Members had a reasonable and legitimate expectation of privacy in their private communications on their browser, especially while using private browsing mode.

164.   Meta intentionally intercepted and collected the Private Information of Plaintiffs and Class Members in order to improve its own financial advantage.

165.   By intentionally intercepted and collected the Private Information of Plaintiffs and Class Members, Meta unlawfully invaded Plaintiffs' and Class Members' privacy by, among others: (i) intruding into Plaintiffs' and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) surreptitiously obtaining and using Plaintiffs' and Class Members' private communications; and (iii) enabling and facilitating the disclosure of Plaintiffs' and Class Members' Private Information without authorization or consent.

166.    Plaintiffs' and Class Members' expectation of privacy was and is especially heightened given Meta's consistent representations that it would clearly disclose to users what information was being gathered and that users would have control over that information.

167.    Meta knew, or acted with reckless disregard, of the fact that a reasonable person in Plaintiffs' and Class Members' position would consider their actions highly offensive.

168.    Meta's unauthorized surreptitious recording, monitoring, and sharing of the users' online activities violated expectations of privacy that have been established by social norms.

169.    As a proximate result of such unauthorized disclosures, Plaintiffs' and Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted and caused damages to Plaintiffs and Class Members.

170.    Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Meta's conduct, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights.

171.    Plaintiffs seek injunctive relief on behalf of the Class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until Meta is enjoined, and restrained by order of this Court, Plaintiffs have no way of controlling their own information and ensuring that their private sessions, browsing activity, and communications remain private. Without injunctive and declaratory relief, Meta can reactivate its tracking tools to continue bypassing privacy and security controls – and Plaintiffs have no way of knowing when that happens or whether their activities will be private as they should be when browsing through incognito mode. In this day and age – it is simply impossible not to use online tools to communicate with financial advisors, lawyers, accountants, health providers and more – and Plaintiffs and the public want to do so privately without being surveilled by the tech giant in real time to then being bombarded with advertisements based on their intimate activities. Furthermore, by storing the troves of sensitive data that Meta gathered in the last year, Meta continues to profit from it, and target Plaintiffs and the Class based

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

on the confidential information and communications it has obtained to date. Thus, Meta's wrongful conduct will continue to cause irreparable injury to Plaintiffs and Class Members, through its continued storage and use of the unlawfully collected information. Plaintiffs and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Class.

## COUNT THREE

### UNJUST ENRICHMENT
*(On behalf of Plaintiffs and the Nationwide Class)*

172.   Plaintiffs herein repeat, reallege, and fully incorporate paragraphs 1-54 and 58-123 as if fully stated herein.

173.   By virtue of the unlawful, unfair and deceptive conduct, Meta knowingly realized significant revenue from the unlawful collection and use of the Private Information of Plaintiffs and Classes Members for profit by way of targeted advertising.

174.   By absconding and misusing Plaintiffs' and Class Members' Private Information, Meta was unjustly enriched and received both financial (from targeted advertisements) and non-financial benefits (competitive intelligence, user profiling precision, algorithmic training data).

175.   Meta enriched itself by saving the costs it reasonably should have spent by obtaining users consent to track their private and sensitive browsing activities. Yet, to increase profits, and at the expense of Plaintiffs and the Class – it gained its competitive and financial advantage. As a result of Meta's conduct, Plaintiffs and Class Members suffered harm, including from privacy invasion, loss of compensation/value for their data, and the lost profits from the use of their Private Information.

176.   It would be inequitable and unjust to permit Meta to retain the enormous economic benefits (financial and otherwise) it has obtained from and/or at the expense of Plaintiffs and Class Members.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

177.    Meta will be unjustly enriched if it is permitted to retain the economic benefits conferred upon it by Plaintiffs and Class Members through Meta's obtaining of the Private Information and the value thereof, and profiting from the unlawful, unauthorized, and impermissible use of the Private Information of Plaintiffs and Class Members.

178.    Plaintiffs and Class Members are therefore entitled to recover the amounts realized by Meta at the expense of Plaintiffs and Class Members.

179.    Plaintiffs and the Class Members have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amount of Meta's ill-gotten gains, and/or other sums as may be just and equitable. In the absence of completed discovery regarding class certification and merits, forcing an election of remedies at the initial pleading stage is premature.

## COUNT FOUR

## DECLARATORY JUDGMENT

## 28 U.S.C. § 2201, *ET SEQ.*,

### *(On behalf of Plaintiffs and the Nationwide Class)*

180.    Plaintiffs herein repeat, reallege, and fully incorporate paragraphs 1-54 and 58-123 as if fully stated herein.

181.    The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., authorizes this Court to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.

182.    Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

183.    An actual controversy has arisen as to whether Meta lawfully collected certain information from Plaintiffs and the Class Members, and how Meta continues to use that information for its own financial gain, as well as whether Meta shares that information with third parties.

CLASS ACTION COMPLAINT

184.    Plaintiffs and the Class, therefore, seek a declaration that Meta violated Plaintiffs' and Class Members' privacy and property rights, and (2) Meta must take remedial measures, including, but not limited to:

a.   Prohibiting Meta from engaging in the wrongful acts stated herein;

b.   Requiring Meta to implement adequate security and privacy protocols and practices to protecting Plaintiffs' and Class Members' information consistent with the industry standards, applicable regulations, and federal, "state, and/or local laws;

c.   Mandating that proper notice be sent to all affected parties, and posted publicly;

d.   Requiring Meta to delete, destroy, and purge the Private Information of Plaintiffs and Class Members that was unlawfully obtained;

e.   Requiring Meta to engage independent third-party auditors and/or internal personnel to ensure all unlawfully obtained information of permanently deleted and purged from its system and otherwise removed or disassociated from Plaintiffs' and Class Members' accounts and advertising profiles;

f.   Cooperating with Plaintiffs and the Class Members in analyzing what data was specifically obtained and whether that Private Information was shared with any third parties; and

g.   Requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

## COUNT FIVE

## VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ("CIPA"),

## CAL. PENAL CODE § 631

### *(On behalf of the California Plaintiffs and the California Subclass)*

185.    The California Plaintiffs and California Subclass Members repeat, reallege, and fully incorporate paragraphs 1-29 and 58-123 as if fully stated herein.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

186.   Plaintiffs Elizabeth Messenger and Ugochukwu Atulobi ("California Plaintiffs") bring this claim individually and on behalf of the California Subclass as defined above.

187.   Meta is a person for purposes of Cal. Penal Code § 631.

188.   CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> (1) "intentionally taps, or makes any unauthorized connection…with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,"

> (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within [the state of California],"

> (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained," or

> (4) aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section"

189.   Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 107918, at *61 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 U.S. Dist. LEXIS 94455, at *15 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic

37

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

190.   Defendant's Meta Pixel and software are a "machine, instrument, contrivance, or ... other manner" used to engage in the prohibited conduct at issue here.

191.   At all relevant times, Meta intentionally intercepted and otherwise tracked Users' web browsing activities, even though they were on a third-party browser. Meta did this knowingly and surreptitiously in order to be able to link online activity that a User was lawfully seeking to protect with its deanonymized profile, to benefit it commercially. Meta was able to intentionally tap, and make unauthorized connections with, the lines of internet communication between the California Plaintiffs and California Subclass Members on the one hand, and third-party websites in which it had installed a Meta Pixel on the other hand, without consent of all parties to the communication.

192.   At all relevant times, by using the Meta Pixel, Meta willfully and without the consent of the California Plaintiffs and California Subclass Members, read or attempted to learn the contents or meaning of electronic communications of the California Plaintiffs and California Subclass Members through the android software exploit in conjunction with the Meta Pixel. This occurred while the electronic communications were in transit or passing over any wire, line, or cable, or were being sent from or received at any place within California. Meta intercepted the California Plaintiffs' and California Subclass Members' communications – including the very terms and phrases they typed into the search bar – without their authorization or consent.

193.   By using the android software exploit in conjunction with the Meta Pixel to bypass the sandboxing in the Android operating system, Meta employed a device to wiretap consumers communications on third-party websites to link private web browsing activities with a de-anonymized identity.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

194.    California Plaintiffs and California Subclass Members did not consent to the interception, reading, learning, recording, and collection of their electronic communications with third-party websites. Accordingly, the interception was unlawful and tortious.

195.    The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

196.    Unless enjoined, Meta will continue to commit the illegal acts alleged here, including the continued use and exploitation of the California Plaintiffs' and California Subclass Members' data that was unlawfully intercepted.

197.    California Plaintiffs and California Subclass Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

<u>**COUNT SIX**</u>

<u>**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ("CIPA"),**</u>

<u>**CAL. PENAL CODE § 635**</u>

***(On behalf of the California Plaintiffs and the California Subclass)***

198.    The California Plaintiffs and California Subclass Members repeat, reallege, and fully incorporate paragraphs 1-29 and 58-123 as if fully stated herein.

199.    The California Plaintiffs bring this claim individually and on behalf of the California Subclass as defined above.

200.    CIPA § 635 makes punishable anyone "who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another[.]" Cal. Penal Code § 635.

201.    The Meta Pixel is a "device" which is "designed or intended for eavesdropping upon the communication of another."

CLASS ACTION COMPLAINT

202.    Meta manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished the Meta Pixel to third-party websites, as well as created and implemented the software exploit that acted in conjunction with the Facebook and Instagram applications to secretly intercept communications and connect it with the California Plaintiffs' and California Subclass' deanonymized Facebook profiles.

203.    Injuries caused by the use of the Meta Pixel and software exploit are traceable to Meta's manufacture, assembly, and provision of the device.

204.    The California Plaintiffs and California Subclass Members are entitled to bring a CIPA § 635 claim per CIPA § 637.2. The court in *In re Meta Pixel Tax Filing Cases* noted that "[b]y including Section 635 within the provisions enforceable under Section 637.2 [] the California Legislature clearly intended to permit private enforcement[.]" 724 F. Supp. 3d 987, 1009 (N.D. Cal. 2024). *See id.* at 1009–10 (allowing plaintiffs' claim against Meta for implementation of the Meta Pixel to proceed because plaintiffs sufficiently pleaded that the "Pixel is primarily designed for eavesdropping").

205.    The California Plaintiffs and California Subclass Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

<u>**COUNT SEVEN**</u>

<u>**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ("CIPA"),**</u>

<u>**CAL. PENAL CODE § 638.51**</u>

***(On behalf of the California Plaintiffs and the California Subclass)***

206.    The California Plaintiffs and California Subclass Members repeat, reallege, and fully incorporate paragraphs 1-29 and 58-123 as if fully stated herein.

207.    The California Plaintiffs bring this claim individually and on behalf of the California Subclass as defined above.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

208.    CIPA § 638.51 provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order[.]" Cal. Penal Code § 638.51.

209.    A "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

210.    A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

211.    Courts interpret "trap and trace device" and "pen register" broadly. The court in *Greenley v. Kochava, Inc.* noted Section 638.50's "expansive language" and explained that this "indicates courts should focus less on the form of the data collector and more on the result." 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023). Applying the plain meaning of "process," the court found that "software that identifies consumers, gathers data, and correlates that data" is "surely among" the processes imagined by the statute. *Id.* "Thus, the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a 'pen register.'" *Id. See also Zarif v. Hwareh.com, Inc.*, 2025 U.S. Dist. LEXIS 26519, at *30-*31 (S.D. Cal. 2025) (rejecting defendant's "narrow reading" of Section 638.51 and allowing plaintiffs to proceed on a claim under this statute involving a Meta Pixel); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929 (C.D. Cal. 2025) (rejecting defendant's suggestion that Section 638.51 applies only to telephone surveillance, not software: "the definitions supplied by § 638.51 are not so limited").

Clarkson Law Firm, P.C.    |    22525 Pacific Coast Highway, Malibu, CA 90265    |    P: (213) 788-4050    F: (213) 788-4070    |    clarksonlawfirm.com

212.   Meta violated Section 638.51 by using a software exploit to bypass protective barriers between Android users' applications and the websites they visit on their devices, including in private browsing mode.

213.   The software exploit functioned as a pen register because it is a device or process that records addressing information, including users IP addresses. *See Shah v. Fandom*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) ("the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information"); *In re Zynga Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("IP addresses constitute addressing information" (internal citation omitted)).

214.   Alternatively, the software exploit acted as a trap and trace device because it is a device or process which "identif[ies] the source (but not the contents) of a communication." *Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076, at *8 (C.D. Cal. Feb. 3, 2025). *See id.* (finding that embedded TikTok software which tracked visitors' device and browser information fell within the ambit of Section 638.51).

215.   Meta did not obtain a court order to install the Meta Pixel device.

216.   The California Plaintiffs and California Subclass Members did not consent to the use of a pen register or trap and trace device.

217.   The California Plaintiffs and California Subclass Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT EIGHT

## INVASION OF PRIVACY UNDER CALIFORNIA CONSTITUTION, ART. I, § 1.

### *(On behalf of the California Plaintiffs and the California Subclass)*

218.   The California Plaintiffs and California Subclass Members repeat, reallege, and fully incorporate paragraphs 1-29 and 58-123 as if fully stated herein.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

219.   The California Plaintiffs bring this claim individually and on behalf of the California Subclass as defined above.

220.   Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., Art. I, § 1.

221.   The right to privacy in California's Constitution creates a private right of action against private and government entities.

222.   California Plaintiffs and California Subclass Members have and continue to have a reasonable expectation of privacy and interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and web browsing information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without their knowledge, authorization, or consent.

223.   At all relevant times, by using the Meta Pixel and the software exploit to record and communicate California Plaintiffs' and California Subclass Members' private web browsing activity, Meta invaded California Plaintiffs' and California Subclass Members' privacy rights under the California Constitution.

224.   California Plaintiffs and California Subclass Members had a reasonable expectation that their communications with third-party websites, especially while in private browsing mode, would remain confidential, and that Meta would not use software exploits to secretly record their private web browsing activity.

225.   This invasion of privacy is serious in nature, scope, and impact because it relates to web browsing and communications that California Plaintiffs and the California Subclass Members

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

specifically intended to keep private. Moreover, it constitutes an egregious breach of the societal norms underlying privacy rights.

226.   As a result of Meta's actions, California Plaintiffs and California Subclass Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

227.    California Plaintiffs and California Subclass Members have been damaged as a direct and proximate result of Meta's invasion of their privacy and are entitled to injunctive relief.

228.   Plaintiffs seek all other relief as the Court may deem just, proper, and available for invasion of privacy under the California Constitution, on behalf of the California Subclass.

**COUNT NINE**

**LARCENY/RECEIPT OF STOLEN PROPERTY**

**VIOLATION OF CALIFORNIA PENAL CODE § 496(a) and (c)**

***(On behalf of the California Plaintiffs and the California Subclass)***

229.   The California Plaintiffs and California Subclass Members repeat, reallege, and fully incorporate paragraphs 1-29 and 58-123 as if fully stated herein.

230.   The California Plaintiffs bring this claim individually and on behalf of the California Subclass as defined above.

231.   Courts recognize that internet users have a property interest in their personal information and data. *See Calhoun v. Google, LLC,* 526 F. Supp. 3d 605, at \*21 (N.D. Cal. Mar. 17, 2021) (recognizing property interest in personal information and rejecting Google's argument that "the personal information that Google allegedly stole is not property"); *In re Experian Data Breach Litigation,* 2016 U.S. Dist. LEXIS 184500, at \*5 (C.D. Cal. Dec. 29, 2016) (loss of value of PII is a viable damages theory); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.,* 440 F. Supp. 3d 447, 460 (D. Md. 2020) ("The growing trend across courts that have considered this issue is to recognize the lost property value of this [personal] information."); *Simona Opris v. Sincera,* 2022 U.S. Dist. LEXIS 94192, at \*20 (E.D. Pa. 2022) (collecting cases).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

232.   Cal. Penal Code § 496(c) permits "any" person who has been injured by a violation of section 496(a) to recover three times the amount of actual damages, costs of suit and attorney's fees in a civil suit.

233.   Penal Code § 496(a) creates an action against "any" person who (1) receives "any" property that has been stolen or obtained in any manner constituting theft, knowing the property to be stolen or obtained, or (2) conceals, sells, withholds, or aids in concealing or withholding "any" property from the owner, knowing the property to be so stolen or illegally obtained.

234.   Under Penal Code § 1.07(a)(38), "person" means "an individual, corporation, or association." Thus, Meta is a person under section 496(a).

235.   As set forth herein, the Users' Private Information was stolen or obtained by theft, without limitation, under Penal Code §484, by false or fraudulent representations or pretenses. At no point did Meta have California Plaintiffs' and California Subclass Members' consent to duplicate their searches and send them to Facebook.

236.   Meta meets the grounds for liability of section 496(a) because it received information that was stolen or obtained by theft and/or false pretenses, and which it knew was stolen or obtained by theft and/or false pretenses when it received it.

237.   As a direct and proximate result of the acts and omissions described above, California Plaintiffs and California Subclass Members were injured by Meta's violations of section 496(a).

238.   Pursuant to California Penal Code § 496(c), the California Plaintiffs and California Subclass Members seek actual damages, treble damages, costs of suit, reasonable attorneys' fees, and any other damages that are authorized by law.

CLASS ACTION COMPLAINT

1
2
3
4

## COUNT TEN

## VIOLATIONS OF THE CALIFORNIA CONSUMER PRIVACY ACT

## Cal. Civ. Code 1798.100 et seq. (CCPA)

### (On behalf of the California Plaintiffs and the California Subclass)

5
6

239.    The California Plaintiffs and California Subclass Members repeat, reallege, and fully incorporate paragraphs 1-29 and 58-123 as if fully stated herein.

7
8
9

240.    The California Plaintiffs bring this claim individually and on behalf of the California Subclass as defined above.

10
11
12

241.    Meta is considered a "business" as that term is defined in Cal. Civ. Code. § 1798.140(c) because it has an annual gross revenue exceeding $25 million and it buys, receives, sells, or shares personal information of 50,000 or more consumers, households, or devices.

13
14
15
16
17
18
19

242.    Meta disregarded Android's security and exploited security weaknesses of the sandboxing model, causing unauthorized access and disclosure of California Plaintiffs' and California Subclass Members' Private Information - "nonencrypted and nonredacted personal information" including browsing history, personal searches, IP addresses, unique identifiers and other sensitive personally identifiable information ("PII"), as defined by the CCPA. Cal. Civ. Code § 1798.150(a)(1).

20
21
22
23
24
25

243.    Meta's surreptitious interception of California Plaintiffs' and California Subclass Members' Private Information constitutes "an unauthorized access and exfiltration, theft, or disclosure" pursuant to Cal. Civ. Code § 1798.150(a)(1), which occurred due to Meta's failure to implement reasonable and necessary security measures and development of technology that exploited Android security system's weaknesses,

26
27
28

244.    Meta had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the California Plaintiffs' and California Subclass Members' Private Information to protect said Private Information.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

CLASS ACTION COMPLAINT

245.   Meta breached the duty it owed to California Plaintiffs and California Subclass Members by secretly intercepting and misusing their Private Information. Meta breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate systems, protocols and practices sufficient to protect the PII of Plaintiff and Class Members; and (b) maintain security systems consistent with industry standards, and compliant with Android's Terms of Service.

246.   As a result, California Plaintiffs' and California Subclass Members' suffered damages and their personal information was exploited and misused.

247.   The California Plaintiffs and California Subclass Members seek restitution, damages, and injunctive relief in the form of an order a) enjoining Meta from continuing the practices that constituted their breach of the duty owed to the California Plaintiffs' and California Subclass Members; and b) deletion of data collected about Plaintiffs and California Subclass.

## COUNT ELEVEN

## VIOLATION OF THE ILLINOIS EAVESDROPPING ACT

## ILCS 720 § 5/14-1, *ET SEQ.*

### *(On behalf of the Illinois Plaintiffs and the Illinois Subclass)*

248.   The Illinois Plaintiffs and Illinois Subclass Members repeat, reallege, and fully incorporate paragraphs 1-11, 54-35, and 58-123 as if fully stated herein.

249.   Plaintiffs Iveth Rodriguez and Lorine Derham ("Illinois Plaintiffs") bring this claim individually and on behalf of the Illinois Subclass as defined above.

250.   720 Ill. Comp. Stat. 5/14-2 provides, in relevant part, that:

(a) A person commits eavesdropping when he or she knowingly and intentionally:

***

*Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com*

(3) Intercepts, records, or transcribes, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication; [or]

(5) Uses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties.

251.    Meta has knowingly and intentionally intercepted, recorded or transcribed, in a surreptitious manner, Illinois Plaintiffs' and Illinois Subclass Members' private electronic communications, without consent, in violation of 720 Ill. Comp. Stat. 5/14-2(1).

252.    Upon information and belief, Meta has used or disclosed information that they knew or reasonably should have known was obtained from a private electronic communication in violation of 720 Ill. Comp. Stat. Ann. 5/14-1, et seq.

253.    Meta did not notify the Illinois Plaintiffs or Illinois Subclass Members of the above-described intentional interception, disclosure and/or use of their wire or electronic communications, nor did Illinois Plaintiffs or Illinois Subclass Members consent to such interception, disclosure, and or use.

254.    Upon information and belief, Meta is currently engaged in and will continue to engage in the above-described intentional interception, disclosure, and/or use of Illinois Plaintiffs' and Illinois Subclass Members' wire or electronic communications, and therefore, are entitled to and do seek injunctive relief prohibiting Meta from violating provisions of the Illinois Eavesdropping Act in the future.

255.    As a result of Meta's intentional interception, disclosure, and/or use of Illinois Plaintiffs' and Illinois Subclass Members' wire or electronic communications in violation of 720 Ill. Comp. Stat. 5/14-1, *et seq.*, Illinois Plaintiffs and Illinois Subclass Members are entitled to an

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

injunction by this Court, actual damages as a result of the violations, and punitive damages, pursuant to 720 Ill. Comp. Stat. 5/14-6.

## COUNT TWELVE

## VIOLATION OF THE PENNSYLVANIA WIRETAPPING AND ELECTRONIC SURVEILLANCE CONTROL ACT

## PA. CONS. STAT. § 5701, *ET SEQ.*

### (On behalf of the Pennsylvania Plaintiffs and the Pennsylvania Subclass)

256.    The Pennsylvania Plaintiffs and Pennsylvania Subclass Members repeat, reallege, and fully incorporate paragraphs 1-11, 36-47, and 58-123 as if fully stated herein.

257.    Plaintiffs Ara Sardarbegians and Mark Camplese, ("Pennsylvania Plaintiffs") bring this claim individually and on behalf of the Pennsylvania Subclass as defined above.

258.    The Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") prohibits the intentional (1) interception, endeavoring to intercept, or procurement of any other person to intercept or endeavoring to intercept "any wire, electronic or oral communication;" (2) disclosure or endeavoring to disclose to any other person the contents of "any wire, electronic or oral communication, or evidence derived therefrom," knowing or having reason to know that the information was obtained through such interception; and (3) using or endeavoring to use the contents of "any wire, electronic or oral communication, or evidence derived therefrom," knowing or having reason to know the information was obtained through such interception. 18 Pa. Cons. Stat. § 5703.

259.    WESCA defines "intercept" as any "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Cons. Stat. § 5702. "Contents" is defined as "used with respect to any wire, electronic or oral communication, is any information concerning the substance, purport, or meaning of that communication." *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

260.    "Person" is defined as "any individual, partnership, association, joint stock company, trust or corporation." *Id*.  Meta, as a corporation, is a "person" under WESCA.

261.    "Electronic communication" is defined as "[a]ny transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." *Id*.

262.    Pennsylvania Plaintiffs' and Pennsylvania Class Members' private browser activities and communications with websites are "contents" of "electronic communications" within the meaning of WESCA.

263.    The Meta Pixel, combined with the bypass is an "electronic, mechanical or other device" "used to intercept a wire, electronic, or oral communication" under WESCA.  *See id*.

264.    Defendant intentionally employs the Meta Pixel combined with the Android software exploit to indiscriminately spy on and intercept users' electronic communications with third-party websites, even when the user is taking clear steps to avoid interception of their communications by Meta and other online trackers.

265.    Pennsylvania Plaintiffs' and Pennsylvania Class Members' electronic communications and data were intercepted contemporaneously with their transmission. They did not give prior consent to having their communications intercepted by Meta. In fact, Pennsylvania Plaintiffs and Pennsylvania Class Members reasonably expected under the circumstances that their electronic communications would not be intercepted.

266.    Meta also used and endeavored to use the electronic communications and data that it intercepted. Meta knew and had reason to know that Pennsylvania Plaintiffs' and Pennsylvania Class Members' electronic communications and data were intercepted.

267.    At all relevant times, Meta's conduct was knowing and intentional.

268.    Pennsylvania Plaintiffs and Pennsylvania Class Members have been damaged by the interception, disclosure, and/or use of their communications in violation of WESCA.  Pursuant to 18

50

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Pa. Cons. Stat. § 5728(a), Pennsylvania Plaintiffs and Pennsylvania Class Members are entitled to and hereby seek (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $10,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.

269.    Meta's conduct is continuous and ongoing, since even though Meta claims to have ceased this specific practice, it maintains the unlawfully gathered data on Pennsylvania Plaintiffs' and Pennsylvania Subclass Members' and continues to use that data to increase its profits. Additionally, there is nothing to stop Meta from continuing with slightly altered techniques other than through court intervention. Pennsylvania Plaintiffs and Pennsylvania Class Members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications without their prior express consent.

**COUNT THIRTEEN**

**VIOLATION OF THE WASHINGTON PRIVACY ACT**

**WASH. REV. CODE CH. 9.73**

***(On behalf of the Washington Plaintiff and the Washington Subclass)***

270.    The Washington Plaintiff and Washington Subclass Members repeats, realleges, and fully incorporates paragraphs 1-11, 48-54, and 58-123 as if fully stated herein.

271.    Plaintiff Tatiana Brodiski, ("Washington Plaintiff") brings this claim individually and on behalf of the Washington Subclass as defined above.

272.    The Washington Privacy Act ("WPA") prohibits the interception or recording of a private communication or conversation by any device, electronic or otherwise, without obtaining the consent of all the parties participating in the conversation. RCW § 9.73.030(1)(a)(b). Under the WPA, communication is private when parties "manifest a subjective intention that it be private and where that expectation is reasonable." *State v. Kipp*, 179 Wn.2d. 718, 729 (Wash. Ct. App. 2014). Proof of subjective intent need not be explicit. *Id.* at 729.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

273.   The Washington Plaintiff and Washington Subclass Members have an expectation of privacy in their private data described herein, and they exercised a reasonable expectation of privacy concerning the transmission of that content.

274.   However, Meta intercepted the Washington Plaintiff and Washington Subclass Members' private data described herein without their consent or knowledge.

275.   Meta collected and intercepted the Washington Plaintiff and Washington Subclass Members' private data described herein through the Meta Pixel and software exploit. Meta used that data for various purposes, including providing targeted advertising.

276.   By associating the collected data with the unique user identifiers and cookies, Meta is able to determine individual users' precise internet browsing activities and habits. Meta thus designed and programmed the Meta Pixel and software exploit to collect and process users' unique user identifiers and cookies in conjunction with the Facebook and Instagram apps.

277.   Meta was actively involved in designing the Meta Pixel and Android software exploit to unlawfully collect and intercept the data alleged herein.

278.   Meta knew the Washington Plaintiff's and Washington Subclass Members' privacy rights would be violated when their content would be unlawfully intercepted.

279.   The unauthorized interceptions described herein are not covered by any business exception because the interceptions were not required to facilitate communications between users.

280.   The Washington Plaintiff and Washington Subclass Members could not provide consent to the interception because they did not know that their private data described herein was being intercepted, and reasonably anticipated that such data would remain private.

281.   The Washington Plaintiff and Washington Subclass Members have a property right and interest in their private data described herein such that the interception of that data is violative of those rights and therefore causes them injury and damages.

CLASS ACTION COMPLAINT

282.   The Washington Plaintiff and Washington Subclass Members suffered further economic injury as a result of Meta's unlawful and unauthorized collection, interception, and use of their private data described herein.

283.   The Washington Plaintiff and Washington Subclass  Members seek the amount of their actual damages in the amount of $100 for each day of violation not to exceed $1,000, liquidated damages, reasonable attorneys' fees and costs, and any other relief this court deems just.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the Proposed Classes defined herein, respectfully requests:

A.   That this Action be maintained as a Class Action, that Plaintiffs be named as Representatives of the Class, that the undersigned be named as Lead Class Counsel of the Class, and that notice of this Action be given to Class Members;

B.   That the Court award Plaintiffs and the Class Members damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

C.   That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Defendant to which Plaintiffs and the Class are entitled, including but not limited to restitution;

D.   Plaintiffs and the Class be awarded with pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

E.   Plaintiffs and the Class be awarded with the reasonable attorneys' fees and costs of suit incurred by their attorneys;

F.   Plaintiffs and the Class be awarded with treble and/or punitive damages insofar as they are allowed by applicable laws; and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

G.    Any and all other such relief as the Court may deem just and proper under the circumstances.

## <u>JURY TRIAL DEMANDED</u>

284.   Plaintiffs demand a jury trial on all triable issues.

**CLARKSON LAW FIRM, P.C.**

By: */s/ Yana Hart*
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*